UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LEN J. TREVINO | CIVIL ACTION |
| Plaintiff | NUMBER |
| versus | |
| | SECTION |
| LOUISIANA RECOVERY SERVICES, INC. and ABC INSURANCE COMPANY, | MAGISTRATE |
| Defendants | **JURY TRIAL DEMANDED** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

NOW INTO COURT through undersigned counsel comes Len J. Trevino, who asserts the following claims.

1.

This is an action for damages and other relief resulting from violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o (the "FDCPA"), which prohibits debt collectors from engaging in deceptive, abusive, and unfair debt collection practices; and for other relief under state law.

### JURISDICTION AND VENUE

2.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).  Venue is proper in the Eastern District of Louisiana, which is the judicial district wherein a substantial part of the events relevant to the claims made herein occurred.  This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

3.

Plaintiff, Len J. Trevino, is a person of full age of majority who is domiciled in New Orleans, Louisiana.

4.

Defendant, Louisiana Recovery Services, Inc. ("LRS") is a Louisiana business corporation doing business in this district.

5.

LRS is a "debt collector" as defined at 15 U.S.C. § 1692a(6).

6.

ABC Insurance Company is the fictitious name of an issuer of a policy of liability insurance to LRS that covers the claims made herein. ABC is liable in solido with LRS pursuant to the Louisiana Direct Action Statute, La. Rev. Stat. Ann. § 22:1269(B).

## FACTS

7.

In a letter dated April 23, 2010, LRS informed Trevino that his account with Donald T. Brown, DDS, for dental services had been placed with LRS for collection, with an outstanding balance of $2,987.00.

8.

After receiving the April 23, 2010 letter from LRS, Trevino hired an attorney, Benjamin Misko, to represent him. Misko responded to LRS's letter with a certified letter dated April 28, 2010. In his letter, Misko informed LRS that he represented Trevino and requested that any further communication be directed to him. Misko also

informed LRS in that letter that Trevino disputed the alleged debt, and requested that LRS send him documentation validating and verifying the alleged debt.

9.

LRS never responded to Misko's request for verification of the debt. Instead, LRS called Misko on May 3, 2010 to verify his representation of Trevino. Then, on May 4, 2010, LRS sent Misko a certified letter asserting Dr. Brown's lien rights on any recovery that Trevino might receive if he filed a medical malpractice claim against Dr. Brown.

10.

After sending Misko the May 4, 2010 lien notice, LRS ignored Misko and continued to contact Trevino directly, on numerous and repeated occasions, in its attempts to collect the debt.

11.

In April 2013, LRS called Trevino and demanded payment. Trevino again explained the basis of his dispute with Dr. Brown, and protested that LRS had not responded to his attorney's request for verification. In response, LRS told Trevino that it was his debt and was verified. LRS also told Trevino that if he didn't pay the debt, it would remain on his credit report.

12.

In July 2013, Trevino applied for a home loan. The LRS collection account showed up in a Wells Fargo review of Trevino's credit history. Trevino explained to Wells Fargo the basis of his dispute with Dr. Brown, and requested that Wells Fargo

approve the loan without requiring him to pay LRS. Wells Fargo eventually did so, but the presence of the LRS account delayed the closing.

13.

After the Wells Fargo home loan was approved, LRS continued to call Trevino and demand payment of the disputed debt. LRS never provided the verification Trevino requested through his attorney.

14.

As a result of LRS's actions, plaintiff has suffered actual damages including but not limited to stress, mental anguish, anxiety, embarrassment, financial loss, and other damages, for which he should be compensated in an amount to be proven at trial.

**FDCPA VIOLATIONS**

15.

The express purpose of the Fair Debt Collection Practices Act ("FDCPA") is to eliminate abusive debt collection practices by debt collectors, and to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged. 15 U.S.C. § 1692(e).

16.

LRS's actions violate the FDCPA in respects including but not limited to a violation of 15 U.S.C. § 1692g(b) by ignoring Trevino's request for verification of a disputed debt and continuing with collection efforts.

**INSURER LIABILITY**

17.

ABC Insurance Company is the fictitious name of an insurance provider that has issued a policy insurance in favor of LRS, which policy covers some or all of the claims

made herein. ABC is liable *in solido* with LRS pursuant to the Louisiana Direct Action Statute, La. Rev. Stat. Ann. § 22:1269(B).

## JURY DEMAND

18.

Plaintiff demands a trial by jury.

**WHEREFORE**, plaintiff prays for a judgment for the following:

(a) Actual damages against LRS under 15 U.S.C. § 1692k(a)(1).

(b) Additional damages of $1,000.00 against LRS under 15 U.S.C. § 1692k(a)(2)(A).

(c) Judgment *in solido* against ABC Insurance Company for any amount awarded in judgment against LRS, pursuant to the Louisiana Direct Action Statute, La. Rev. Stat. Ann. § 22:1269(B).

(d) Reasonable attorney fees and costs under 15 U.S.C. § 1692k(a)(3).

(e) Interest.

(f) All other relief appropriate in the premises.

Respectfully submitted,

/s/ Steve R. Conley
Steve R. Conley (LSBA #21246)
321 N. Vermont Street, Suite 210
Covington, LA 70433
Tel: 985-892-7222 FAX: 985-590-5838
steve@consumerlaw1.com